**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

In re:                                               Case No.: 6:24-bk-02922-TPG
D & J POOL PREP CORP.,                               Chapter 11

    Debtor-in-Possession.
_____/

**COMBINED CONFIRMATION AFFIDAVIT**
**AND PROFFER OF EVIDENCE DEMONSTRATING**
**COMPLIANCE WITH SECTION 1129 OF THE BANKRUPTCY CODE**

STATE OF FLORIDA    )
                              )ss:
COUNTY OF  Orange  )

    Mauro Zelaya being duly sworn, hereby deposes and says:

    1.    My name is Mauro Zelaya, I am over 21 years of age and fully competent to make this Declaration. Unless otherwise stated, I have personal knowledge of the facts set forth in this Affidavit.

    2.    I am the President and 100% owner of D & J Pool Prep Corp.

    3.    I make this *Proffer of Testimony* in support of, and for final approval of, the Debtor's *Disclosure Statement For Small Business Under Chapter 11* (DE 110) that was conditionally approved by this Court by entry of the *Order Conditionally Approving Disclosure Statement, Scheduling Confirmation Hearing, and Fixing Deadlines* (DE115); and for confirmation of Debtor's *Plan For Small Business Under Chapter 11* (the "Plan") (DE 111) filed on December 3, 2024, as modified at DE 130 on January 30, 2025, to demonstrate compliance with Bankruptcy Code §1129(a) in support of confirmation of the Debtor's Plan (the "Proffer").

    4.    As President of the Debtor in the above captioned Chapter 11 Bankruptcy Case, I am familiar with the assets of the estate.

    5.    I am also familiar with and participated in, the negotiations leading to, and the terms and conditions of the Plan and the documents related thereto. More specifically, I was directly responsible for supervising the preparation of the financial projections and the liquidation analysis contained in these documents and I reviewed them for accuracy and completeness.

    6.    The plan, containing sixteen classes of creditors and one priority tax claim, and includes the following principal features:

        (a)    There are fifteen classes of secured claims held by eight different lenders and one class of sixteen unsecured claims;

Page 1 of 10

      (b)     All but one secured class is secured by equipment or vehicles;
      (c)     There are Eleven unimpaired classes;
      (d)     Three of the four impaired classes, all voted in favor of confirmation;
      (e)     The unsecured creditors will be paid 19.76% of their claims in twenty quarterly payments; and
      (f)     The IRS holds a priority tax claim that will be paid over 52 months.

8.    As a result of reorganization, the Debtor will have substantially reduced its debt and debt service requirements.

**Liquidation Analysis**

9.    As set forth in the analysis contained in the disclosure statement (Exhibit "B" in DE 110), a liquidation of the Debtor would result in total pro rata distribution of $215,316.00 or an approximate 19.76% dividend for distribution to the unsecured creditors. The proposed Plan provides for a total distribution to unsecured creditors of $220,00.00.

10.    The methodology used in preparing or supervising the preparation of the liquidation analysis included the use of a fair market value analysis of Debtor's assets.

**Feasibility**

11.    I believe the Debtor will be able to meet all of its obligations under the plan. In particular:

      (a)     As shown on the Debtor's MOR Summary (Exhibit "E" to DS at DE 110), buttressed by more recent MOR's (November & December), the Debtor has sufficient revenue to afford the proposed Plan. Debtor uses and pays for, on an on goings basis, the 14 pieces of equipment and vehicles covered by the Plan. Debtor is current in the payments.

      (b)     The Projections of Debtor's income for five years, attached to the Disclosure Statement (DE 110) as Exhibit "G", reflects a proposed yearly gross income more than adequate to pay all 17 classes (including IRS) of creditors. For Year 1 of the Plan, as an example, a total of $286,209.11 is needed on an annual basis to pay all of the creditors paid pursuant to the Plan. Exhibit "G" shows that after the payment of all non-plan obligations, the Debtor is projected to have $297,500.00 available to fund the Plan. Projected income, expenses and net income to fund the Plan in the remaining four years of the Plan are consistent with the year 1 cash flow pattern.

A.    **Sources of Evidence of Compliance with 11 U.S.C. §1129**.

1.    **Judicial Notice**. The Debtor asks the Court to take judicial notice of all documents filed in Debtor's bankruptcy case, including proofs of claim.

2.    **Proffered Testimony of Mauro Zelaya**, I, Mauro Zelaya, 100% owner and President of the Debtor, if called to testify, would testify under oath as set forth below, from my own personal knowledge and information provided to me by certain of the Debtor's professionals,

from my review of business records maintained by the Debtor in the ordinary course of its regularly conducted business activities, from my knowledge and belief concerning the operations and financial affairs of the Debtor, and as an expert on the financial affairs, management and operation of the Debtor.

I would testify that the Debtor, a Florida corporation, was founded in April 2019. I am the 100% owner and sole shareholder. The Debtor is a swimming pool construction company. The Debtor's current place of business is 2314 Enfield Court, Orlando, Florida 32837.

There was one main reason that the Debtor filed for Chapter 11 bankruptcy. In 2022, the Debtor had a business boom. Due to the COVID-19 Pandemic the interest in home swimming pools increased dramatically. In order to fulfill the contractual obligations that the Debtor agreed to, the company purchased additional equipment and machinery needed to complete the work. In 2023, once the COVID-19 Pandemic had substantially passed and people were back to work, business drastically declined, back to pre-COVID-19 Pandemic revenue. As a result, the Debtor was unable to keep up with payments for equipment and vehicles. One creditor in particular, Alliance Funding Group, aggressive in seeking payment, filed suit and obtained a judgement against the Debtor for $169,310.39 plus interest and then garnished Debtor's bank account. Debtor filed in Chapter 11 on June 11, 2024 to get its bank account released.

Debtor's gross revenue numbers for 2022, 2023 and 2024 are consistent with my narrative: In 2022 we did $6,969,898 in business. Our best year ever. In 2023 our income fell to $2,363,297. The first six months in 2024 prior to the bankruptcy, we showed regrowth with an average monthly gross of $343,205. Annualized, that would total $4,118,466. Since we filed in June 2024, we have averaged through November, gross income of $371,694 per month or $4,460,328 if annualized. So we are well on the road of recovery.

In regards to testimony as to the treatment of each class in the Plan, I would prefer to summarize the Plan, as opposed to going into great detail, in as much the type of claim and treatment is the same in almost all classes. I do not want to be unnecessarily repetitious. As I previously stated, 15 of the 16 classes of creditors, are secured and the collateral for each loan is ether a piece of equipment or a vehicle. Only 4 of all of the classes are impaired (Classes 1,4,5 and 16). For almost all classes (Classes 2, 3, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15), the Plan provides for the Debtor simply adopting and reaffirming the existing vehicle and/ or equipment loans. The Debtor is current in all loans presently requiring payment.

In the way of further information, the following is a list of the 6 creditors who have secured unimpaired claims treated in the Plan:

1) BMO Bank         Class 2
2) CNH Capital      Class 3
3) AmeriCredit      Class 6, 7, 8
4) Deere            Class 9, 10
5) Ally Bank        Class 11
6) Caterpillar      Class 12, 13, 14, 15

There of the four impaired classes (4, 5, 16) voted in favor of confirmation. Class 1 did not vote. <u>The proposed treatment of the impaired classes is as follows.</u>

Class 1 consists of the allowed secured claim of Byzfunder NY, LLC ("Byzfunder") in the amount of $219,546.00 (POC-15). This loan is first in priority among creditors, in that it holds a UCC-1 at #202300389570 filed on February 10, 2023 that encumbers all of Debtor's accounts receivables, which on the day of filing in Chapter 11, totaled $276,309.34. In as much as the loan was over secured, no request for adequate protection payments was made by Debtor or ordered by the Court. In December 2023, Debtor had entered into a loan agreement with Byzfunder that provided funds totaling $320,000.00 for which the Debtor had to repay the sum of $409,600.00 at the rate of $8,192.00 per week. The plan proposes to pay the balance due, without any additional interest as the Debtor has already paid 27% for the loan, over 60 months, with a monthly payment of $3,659.10, commencing on the Plan Effective Date. The UCC lien will stay in full force until the loan balance is paid in full. The creditor did not vote, requiring the Debtor to file an *Expedited Motion for Cramdown*.

Class 4 consists of the secured claim of First Citizens Bank & Trust Company in the amount of $35,411.00 (Order at DE 67). This loan is secured by a 2023 Mahindra Utility Tractor, a 2005 Kenworth T800 VIN #3WKDA48X75F084464; and a 2015 Chevy 2500 HD truck VIN #1GB2CUEG8FZ143266 with liens on the titles of the two trucks and a UCC-1 at #202201818583 on the Mahindra filed on June 2, 2022. The original filed claim (POC-20) was in the amount of $45,490.26. However, in addition to the proof of claim, the lender filed a Motion for Relief from Stay (DE 53). The parties agreed that the value of the collateral was $35,411.00. An Agreed Order (DE 67) was entered by the Court, reducing the balance owed to the agreed value of the collateral, to be paid over 60 months, with interest at 10.5%, resulting in a payment of $761.12, which commenced on October 2, 2024 as an Adequate Protection Payment (DE 95; DE 67) and will become a plan payment upon confirmation. The unsecured portion of the claim ($10,079.66) has been added to the unsecured class (Class 16). Payments are current. The liens on vehicle title and the UCC lien on the Mahindra, shall remain in full force until the loan balance is paid in full. Payments are current. This creditor voted in favor of the Plan at Document Number 2 of the Ballot Report.

Class 5 consists of the secured claim of First Citizens Bank & Trust Company in the amount of $14,600.00 (Order at DE 59). This loan is secured by a 2007 Ford Flatbed Truck, VIN #3FRWF65R67V40A527, with a lien on the title in favor of the lender. Lender filed a Proof of Claim (POC-11-2) in the amount of $23,827.89. Debtor, after reaching an agreement with lender through its counsel, filed an Agreed Motion to Value the Ford (DE 57). The Court entered an Agreed Order at DE 59 which bifurcated the amended claim of $23,827.89 into a secured claim for $14,600.00 to be repaid over 60 months at 10.5%, resulting in a monthly payment of $313.81, commencing on October 1, 2024 as an Adequate Protection Payment (DE 95; DE 59) and will become a plan payment upon confirmation. The unsecured portion of the claim ($9,227.89) has been added to the unsecured class (Class 16). Payments are current. The lien on vehicle title shall remain in full force until the loan balance is paid in full. This creditor voted in favor of the Plan at Document Number 4 of the Ballot Report.

Class 16 currently consists of sixteen (16) allowed unsecured claims totaling $1,113,374.02. This class will receive a pro rata distribution of $220,000.00 or 19.76%, which is more than they would receive in a Chapter 7 liquidation ($209,573.00 - see Exhibit "B" to Disclosure Statement DE 110). Distributions will be made over 60 months in 20 quarterly payments of $11,000.00 each. Three creditors voted in favor of the Plan at Document Numbers 1,3 and 5 of the Ballot Report. Pursuant to *First Modification to Plan of Reorganization* filed on

January 30, 2025 at DE 130, the Debtor added to this class a possible new claimant, of whom the Debtor was, until very recently, unaware. The new creditor, TBF Financial LLC, alleges that Debtor owes it a sum in excess of $110,000.00 for a defaulted loan for the purchase of two dump trucks. Debtor believes that this is incorrect. However, any proven outstanding balance would be classified as an unsecured loan and will be repaid at a 19.76% distribution as a member of Class 16, without any increase in the dollar size of the unsecured pool or reduction in distribution percentage to the other members of the class. Debtor is attempting to ascertain the validity of the new claim.

The IRS has filed a claim for $295,772.32 (POC-13). Of that amount, $205,184.49 is a priority claim and it is for corporate income taxes for 2022 and 2023. Only tax year 2022 in the amount of $104,587.06 has actually been assessed. As set forth in the proof of claim, the taxes and interest amount for 2023 are estimated and based on available information and is subject to amendment as may be required upon actual filing of the return or other required information is provided. Debtor will repay the priority claim pursuant to the Code, within 60 months from the date that the bankruptcy was filed. Assuming that the payback period had 52 months remaining, with a Plan Effective Date in March, the monthly payments, including 4% interest would be $4,304.27. The repayment amount will be adjusted to comply with any amendment to the claim. No amended claim has been filed. The balance of the claim of $90,587.83 constitutes an estimated general unsecured claim for FICA taxes for 3Q19 and 4Q19 in the total amount of $82,286.0 and FUTA taxes for 2019 in the amount of $1,565.00. The estimated, unsecured claim in the amount of $90,587.83, unless and until amended, will be repaid in the sum as set forth herein, as a member of the unsecured class, Class 16. No amended claim has been filed for the unsecured portion of the tax claim.

On January 30, 2025 the Debtor filed *First Modification to Plan of Reorganization* (DE 130), which contained, inter alia, a commitment by me, as Debtor's owner and President, that I would pay SCP Distributors LLC and Superior Pool Products LLC (the "Vendors") the total balance of $58,710.33 due to them as "Critical Vendors" in ten equal monthly payments, commencing one month after the Effective Date of the Plan. This payment proposal to the Vendors is neither included as part of, or required by, the proposed Plan, but was set forth as an assurance to the Vendors that they will be paid in full. The Debtor and the Vendors wish to continue to conduct business with each other, and to that end, the full payment of all items deemed critical by the parties is necessary.

I am familiar with the Debtor's operations, facilities, policies and financial affairs. I am responsible, in consultation with legal counsel and other court approved professionals, for the supervision of the Debtor's chapter 11 case, including compliance with the requirements of the Bankruptcy Code and with respect to the Debtor's Disclosure Statement and Plan.

**B.** **Compliance with §1129.**

1. **§1129(a)(1).** A review of the Plan, together with my Proffer will show that the Debtor has satisfied Bankruptcy Code §1129(a)(1). The Plan complies with the mandatory plan requirements set forth in Bankruptcy Code §1123(a), and all plan provisions are permitted by Bankruptcy Code §1123. The Plan provides for adequate means for its implementation, through among other things, re-vesting property of the estate in the Debtor, providing that the Debtor will continue its operations after the effective date of the plan free of any restrictions of the Bankruptcy Code, and providing an adequate means for the Debtor to fund the Plan. The Plan also complies

with Bankruptcy Code §1124. Valid business, legal and factual reasons exist for the separate classification of each of the classes of claims created and treated under the plan. The claims in each class are substantially similar to the other claims in the same class. Each secured creditor is separately classified. All unsecured non-priority claims are in the same class.

    2.    **§1129(a)(2)**. I would testify that to the best of my knowledge and belief, the Debtor has complied with the requirements of the Bankruptcy Code while a debtor in possession. I would further testify that after filing its Chapter 11 case, the Debtor used only debtor in possession bank accounts; filed its monthly operating reports on a timely basis; used cash collateral only as permitted by court orders; paid professionals only pursuant to court orders ; paid obligations arising before the bankruptcy filing only with court approval (DE 108); sold assets outside the ordinary course of business only with prior court approval; and did not solicit votes on its plan until after court approval of the disclosure statement. This testimony, together with documents on file in this bankruptcy case, including orders approving retention of professionals (DE 90) and approving fee applications, orders approving extension of time to reject or assume leases, the monthly operating reports (DE 61, DE 80, DE 82, DE 98, DE 102, DE 127), the Disclosure Statement and Plan of Reorganization (DE 110 and DE 111), the orders and notice conditionally approving the Disclosure Statement and fixing the Plan confirmation deadlines (DE 115) and the certificate of service (DE 117) of the Plan packages, establish that Bankruptcy Code §1129(a)(2) has been satisfied.

    3.    **§1129(a)(3)**. I would testify, and the Court file reflects, that of Debtor's total debt of $1,924,766.00. The principal indebtedness consists of unsecured debt that comprises Class 16 of the plan. Not including the recently made, but unproven additional loan claim for $110,000.00, the other 16 unsecured creditors have a total of $1,113,374.02 in allowed claims. The balance of the debt is: IRS priority tax claim of $205,184.49 and secured debt of $606,207.00. I would testify that from the beginning of this case, Debtor has worked in good faith toward confirmation of the Plan. Further that the principal purpose of the Plan is to reorganize of the Debtor's business operations and lower its monthly expenses. The Debtor has proposed the Plan in good faith after negotiations with creditors and not by any means known to the Debtor that are forbidden by law. The Debtor solicited acceptances of the Plan only after approval of the disclosure statement. This testimony establishes that Bankruptcy Code §1129(a)(3) has been satisfied.

    4.    **§1129(a)(4)**. I would testify that any payment made by the Debtor to any professional person for services or for costs and expenses in connection with the plan or incident to this bankruptcy case has been approved by this Court. There are no persons issuing securities or acquiring property under the Plan. This testimony establishes that Bankruptcy Code §1129(a)(4) has been satisfied.

    5.    **§1129(a)(5)**. I would testify that the Debtor has fully and accurately disclosed in section III D 2 page 22 of the Disclose Statement (DE 110), the identity and any affiliations of the all of the individuals proposed to serve as officers of Debtor after the Plan is confirmed. As defined by § 101(31) of the United States Bankruptcy Code, the current insider of the Debtor is only myself.

After the Effective Date[1] (the "Effective Date") of the order confirming the Debtor's Plan, the Debtor's entity will continue to operate as it does currently. I will continue to serve as the Debtor's President and sole owner. This testimony establishes that Bankruptcy Code §1129(a)(5) has been satisfied.

6. **§1129(a)(6)**. I would testify that I believe and is reliably informed that the Debtor does not charge any rate that is subject to the jurisdiction of any governmental regulatory commission which would require it to seek such commission's approval of any rate changes. This testimony establishes that Bankruptcy Code §1129(a)(6) has been satisfied.

7. **§1129(a)(7)**. I would testify that I have been involved the preparation of an estimate of the expected proceeds from a liquidation of Debtor's assets in the hypothetical event that all of Debtor's assets were to be liquidated pursuant to chapter 7 of the Bankruptcy Code. The liquidation analysis, as required by section 1129(a)(7), is attached to the Disclosure Statement (DE 110) as Exhibit "B". For purposes of the liquidation analysis, Debtor has assumed that this chapter 7 case converted to a case under chapter 7 on the plan effective date, that a chapter 7 trustee were appointed, that the trustee would abandon an asset if there is no realizable equity for the trustee after payment of claims secured by the collateral and any estate tax liabilities resulting from the sale, and that hypothetical liquidation sales for cash would be made with the assistance of professional brokers as appropriate. I would testify that in my opinion the liquidation analysis reflects a reasonable estimate of liquidation values and, based on the amount of secured debt held by creditors and the nature of their collateral and the tax liabilities resulting from the sale of the collateral, holders of unsecured non-priority claims would likely receive a total pro rata distribution of $215,316.00 or 19.33% of the amount of their allowed claims in a chapter 7 liquidation. By contrast, under the Plan, such holders are to receive a total pro rata distribution of $220,000.00, or 19.76% of their claim amount through 20 quarterly payments of $11,000.00 each. This testimony establishes that Bankruptcy Code §1129(a)(7) has been satisfied.

8. **§1129(a)(8)**. **CONFIRMATION IS NOT AGREED** The Plan contains four impaired classes (Classes 1, 4, 5 and 16). Three classes (Classes 4, 5 and 16) voted to confirm the Plan. Class 1 did not vote. **Class 1** is the secured claim of Byzfunder NY, LLC, in the amount pf $219,546 (POC-15) for a cash loan. The claim is secured by Debtor's account receivables. The plan proposes to pay the claim in 60 monthly payments of $3,659.10 each. **Class 4** is the secured claim of First Citizens Bank & Trust Company ("1st Citizens") in the agreed amount of $35,411.00 (DE 67) with interest at 10.5%, secured by several trucks and a tractor. The loan treatment provides for 60 monthly payments of $761.12, which commenced in October, 2024 as Adequate Protection Payments. **Class 5** is another secured loan given by 1st Citizens for the purchase of a 2007 Ford truck in the agreed amount of $14,600.00, with interest at 10.5% (DE 59). This loan is to be repaid over 60 months, with monthly payments of $313.81. **Class 16** is comprised of 16 unsecured creditors, holding claims totaling $1,113,374.02. they will be paid 19.76% of their claims in 20 quarterly payments.

As shown by the *Ballot Report* three impaired classes voted in favor of confirmation:

---

[1] The Effective Date of this Plan is the first business day following the date that is thirty (30) days after the entry of the order of confirmation. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

The sole member of **Class 4**, First Citizens Bank & Trust Company voted in favor of the Plan in the amount of $35,411.00 at Document Number 2 on January 8, 2025.

The sole member of **Class 5**, First Citizens Bank & Trust Company voted in favor of the Plan in the amount of $14,600.00 at Document Number 4 on January 8, 2025.

Three members of **Class 16** voted and both voted in favor of confirmation:

- Alliance Funding Group voted in favor of the Plan in the amount of $209,255.10 at Document Number 1 on January 2, 2025;
- First Citizens Bank & Trust Company voted in favor of the Plan in the amount of $19,307.55 at Document Number 3 on January 2, 2025;
- American Express National Bank voted in favor of the Plan in the amount of $48,012.63 at Document Number 5 on January 23, 2025;

Three of the four impaired classes voted in favor of the Plan. The Debtor has not satisfied Bankruptcy Code §1129(a)(8) and has filed an *Expedited Motion for Cramdown* on February 3, 2025. I have been advised by counsel that the Plan treatment of Class 1 is consistent with the requirements of §1129(b)(2)(A), in that the Plan provides for the retention of a lien securing the respective secured claim and provides deferred cash payments totaling the allowed amount of such claim.

9. **§1129(a)(9)**.  The Plan provides that each allowed administrative claim is to be paid in full in cash on the effective date of the plan, or when the claim is allowed, unless the holder of the claim agrees otherwise.

Debtor recently filed *First Modification to Plan of Reorganization* (DE 130) on January 30, 2025, which provided for payment of an administrative claim for $23,090.83 to SCP Distributors LLC and Superior Pool Products LLC pursuant to Section 503(b)(9) of the Code.

The Plan provides that holders of allowed general unsecured claims (Class 16) are to be paid over the same period. There are no non-accepting classes of claims of a kind specified in Bankruptcy Code §§ 507(a)(1), (a)(4), (a)(5), (a)(6) or (a)(7). Therefore, the Debtor has satisfied Bankruptcy Code §1129(a)(9).

10. **§1129(a)(10)**. The *Ballot Report* shows that at least one impaired class of claims voted to accept the plan without including any acceptances by an insider. Therefore, Debtor has satisfied the requirement that at least one impaired classes of claims voted to accept the plan without including any acceptances by an insider. The Debtor has satisfied Bankruptcy Code §1129(a)(10).

11. **§1129(a)(11)**. I would testify that the source of funds to make payments to creditors under the Plan will initially, on the Plan effective Date, be from the funds on deposit in the Debtor's DIP account, which as of November 30, 2024 was $66,533.33. It is further my opinion that the Debtor will generate sufficient funds after the effective date of the Plan to fund fully its ongoing operations and to pay all obligations set forth in the Plan as and when due.

The Plan proposed is feasible and the consummation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Debtor. Accordingly, the Debtor asserts that it is able to perform all of its obligations under the Plan and that the Plan satisfies the requirements or conditions set forth in § 1129(a)(11) of the Code.

12. **§1129(a)(12)**. I would testify that the Debtor is current on its payments to the United States Trustee. The Debtor intends to pay any and all additional fees payable to the Office of the United States Trustee as and when due and payable. This testimony establishes that Bankruptcy Code §1129(a)(12) has been satisfied.

13. **§1129(a)(13)**. I would testify that the Debtor did not prior to or after this chapter 11 filing provide any retiree benefits to any employees. This testimony establishes that Bankruptcy Code §1129(a)(13) is not applicable and therefore has been satisfied.

14. **§1129(a)(14)**. I would testify that the Debtor is not an individual and therefore not subject to compliance with §§ 1129(a)(14). Therefore, Bankruptcy Code §1129(a)(14) has been satisfied

15. **§1129(a) (15)**. The Debtor is not an individual, §1129(a) (15) is not applicable and therefore is satisfied.

16. **§1129(a)(16)**. Because the plan does not provide for the transfer of property, Bankruptcy Code § 1129(a)(16) is satisfied.

17. I, Mauro Zelaya, sole owner and President of the Plan Proponent, executed this *Confirmation Affidavit and Proffer of Testimony* on February ___, 2025 setting forth the reasons why the Plan should be confirmed.

**WHEREFORE**, the Debtor-in-Possession, D & J Pool Prep Corp., respectfully requests that its *Disclosure Statement for Small Business Under Chapter 11(DE 110)* filed on December 3, 2024 and conditionally approved by Order entered on December 16, 2024 (DE 115) be finally approved; and that the *Plan of Reorganization for Small Business Under Chapter11* filed on December 3, 2024 (DE 111), as modified (DE 130) on January 30, 2025, or any amendments thereto as set forth in this proffer be confirmed.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Mauro Zelaya,
President of D & J Pool Prep Corp.

STATE OF FLORIDA    )
                    )
COUNTY OF Orange    )

Sworn and subscribed before me this 4th day of February 2025, did personally appear Mauro Zelaya, known to me as the President of D&J Pool Prep Corp., and who is either _____

personally known to me, or who has produced the following identification: __FL Driver License__ .

_____
Signature of Notary Public

My Commission Expires: 05/19/2026

> Notary Public State of Florida
> Danielle Leigh Verrett
> My Commission
> HH 265656
> Exp. 5/19/2026